Good morning, Your Honor. Good morning. May it please the Court, my name is Kevin Long. I'm the attorney for the petitioner. This is an immigration matter as well, and the petitioner is a 46-year-old now, a female from the People's Republic of China, who was, who applied for and obtained a visa on July 29, 2003, with a different name other than her own, and entered the United States on August 23, 2003, and was inspected by the U.S. Customs Border Patrol, and applied for asylum right afterwards in September 2003, based on her past experience with the Chinese government for forced sterilization after she gave birth to two children, and as well as her participation and detention for her underground church activities. And the main issues that we are appealing today that are in front of this Court are, first, whether the immigration judge can take the initiative to charge or to deny relief for saying that the petitioner applied for asylum. He was not sure within the one-year statutory deadline, because he was not sure the identification of the petitioner could be established based on the false... But didn't the government already concede that? Right. So I don't think you have to worry about it. She's timely on her asylum. So we are challenging that as a due process claim, violation for fundamental fairness, as the judge should be a neutral arbiter, as opposed to being the prosecutor. Right, but what's your separate remedy under that? I mean, now, so it's not barred. Should we just look at the claim on the merits? Yes, Your Honor, that's true. But I think we have an issue of fundamental fairness here, due process here, because it shouldn't be denied based on her... Wait, I'm not following you. Are you saying that because the judge was wrong and the government has conceded it with respect to the one-year issue, that everything else that he did is inevitably a violation of due process? No, Your Honor. Okay, well, then I don't understand why you're arguing this issue. The argument is that the government did not even bring charge about the one-year issue. Even in the NTA, it stated that she entered the United States on August 23, 2007. Okay, but you've won this issue. The government's conceded it. So why are we talking about it? Because we think this is fundamental fairness here at play and that she should not be, you know, denied relief because of this issue. Well, she won't be denied relief because of this issue. Right. And it's just on this issue alone, it should be remanded back to the BIA or the... You don't want us to examine the bases for the adverse credibility to determine whether they're supported by substantial evidence? Yes, Your Honor. Yes. You don't want us to? No, I'm sorry. Do you want us to? I'm sorry, Your Honor? I mean, do you want... Are you saying that basis alone is a reason to... That is the main reason, yes. ...to find that the adverse credibility determination was not supported by substantial evidence? We're also arguing that the immigration judge's reason to deny asylum withholding... Well, whether the immigration judge's reason to deny asylum withholding constitutes substantial evidence because of that, and also whether the BIA abuses discretion in refusing to consider evidence submitted on appeal by basically, in effect, affirming the immigration judge's decision. She did try to... Because the judge had doubt about her identity, she did try to submit additional documents during the appeal, including her diploma, her teacher's certificate, and also as well as pictures of her being subject to sterilization. And the BIA did not consider this evidence. We know that the BIA, even though it's an appellate body, but it's not a purely appellate body. It's also an administrative body, and it should have considered the evidence at the time it was making the decision. So that's also an issue that we would like the court to consider. And the fact of the matter is that the respondent produced the visa, the passport, her national identification. These were accepted to the FDL forensic analysis. They came back to be authentic, even though the name was noticed, but the picture, the application visa, the picture on the application, the picture on the passport, and the picture on the national ID, that there were no problem with those. But the judge stated that he couldn't determine the identity simply because of the difference in pictures. However, the pictures, they were dated differently, almost five, six years apart. So, I mean, it's just understandable the picture might be a little different. Counsel, I think you best turn to the adverse credibility determination. And whether there's substantial evidence to substantiate that. Right. That's part of the argument here, that the evidence submitted, the judge's adverse credibility finding was not backed by substantial evidence. And moreover, this is a pre-Real ID Act. So there may be some inconsistencies, as pointed out by the immigration judge. These do not go to the heart of the claim, which is, of course, persecution based on the family planning control policy, that she was subject to forced sterilization after giving birth to a second child. And not only that, her family was subject to harassment. She was demoted, downgraded two levels of her salary. She had to pay a 20,000 RMB fine to the government after giving birth to the second child, which, of course, you know, that's substantial for her in China. Do you want to reserve some of your time for rebuttal? Yes. All right. Great. Thanks. Thank you. May it please this Court, my name is Andrew Oliveira. On behalf of the respondent, Eric H. Holder, the Attorney General of the United States. Lou is seeking asylum based on two separate claims. One, that she was forced to undergo sterilization. And two, that she was arrested because she practiced Christianity in a house church. The immigration judge made an adverse credibility finding with respect to both claims and denied asylum, withholding, and CAD accordingly, which the Board affirmed and the evidence in the record does not compel reversal. Just briefly, I'd like to go to the untimely issue. Because the immigration judge, as we state, made a harmless error, but because he also denied the application on the basis of the adverse credibility, there is no basis for reversing with respect to the untimely decision. But it's your position with respect to the one-year bar, that is not, in fact, a bar? Correct, because... She's eligible for asylum with respect to the one-year bar? Correct, because she conceded the alleged entry date, which was within one year. So that's off the table? Yes. However, the evidence in the record does not compel reversal of the adverse credibility finding. With respect to the sterilization claim, she submitted... I have two preliminary things. Yes. I want to commend you on your concession on the one-year bar. That's refreshing to have that. The second thing I want to point out, though, is in the last case we had, Dang, the immigration judge held against Dang the fact that there were registered churches in the area that he could have gone to and he didn't go to, so therefore he didn't have a sincere belief in his religion, right? I don't know if you're familiar with the argument. I overheard it, yes. Yes, okay. But in this case, the BIA for the board says, we do not agree that the opportunity to attend a registered church would allow the respondent to practice her religion with impunity. So the board's taking an exact opposite position from the IJ in the last case. Well, yes. And the immigration judge in this case also stated that she didn't attend the registered churches. And the board was quick to point out, though, that a person is not required to attend the government churches. Right. So that undermines the position of the IJ in Dang when he used that as a basis for, I mean, I know you're not arguing, Dang, but when I read these two cases right after each other because they were right next to each other on the calendar, I thought maybe the board and the IJs ought to get this straight. You know, you can't hold it against them and not against others. Well, I don't know the case. Just write a little memo. Oh, okay. To your superiors. I'll make a note of that. For the next case. Thank you. Now you can continue on the others. With respect to the sterilization, Lou submitted two sterilization certificates to corroborate her claim. She said they were made in quadruplicate, so they should be identical. No, that's not what she said. What she said is they're quadruplicate in the sense that they're four pieces of paper stamped individually, which is why the stamps are in different places. Correct. But that doesn't address some of the other issues that the immigration judge noted. What are you envisioning? Are you envisioning, like, one of our forms in the United, you know, office forms in the United States, or the IJ, maybe one of those ones where you've got, like, the yellow copy and the green copy and the pink copy and the white copy and you fill them all out the same and they all look exactly the same. Is that what's in the IJ's mind when he's saying it was quadruplicate, so they should have exactly looked the same? That was her statement that they were in quadruplicate. She said there were four copies. I mean, quadruplicate, right, quadruplicate. So are we saying, like, the kinds of business forms we routinely find in the same kind of forms that they use in the hospitals in China? Well, again, she said, though, that they were identical, and they're not. And that's just looking at them, there are significant differences. And what differences are you paying attention to? Okay. First, there is a different date of procedure on the two forms. The first translation says that it was done November 11th. The second says that it was done November 1st. Secondly, her ---- You agree that November 1st is hard to read, the form? But they didn't ---- Council had the opportunity to say that it was a translation error and present a different translation if that was the issue. If the sole issue was that it was a translation error, then that could have been resolved. But did the IJ give Lou or the council the opportunity to explain the discrepancies? Yes, she was given the opportunity. Really? Again, the initial hearing was held in February. When there were some issues, it was continued. There was another hearing in August where additional evidence was submitted. When the evidence was sent to the laboratory for further investigation. And at that point, she did submit additional corroborating evidence. Well, is the theory that, as you understand it, that the IJ adopted, is that these are fraudulent somehow, that she's created these documents with two different dates and her husband's age instead of her own? I mean, this is ---- I can't figure out the logic of the theory that she is somehow complicit in some fraudulent preparation of documents that are obviously subject to impeachment. If she created these herself or had them created, why would she put a different age than her own? Well, as she said that her husband sent her these. But also the immigration judge isn't making a frivolous finding that she deliberately fabricated the claim. He's simply saying based on the evidence that she submitted, which is inconsistent with itself, he's unable to determine what actually happened. And her two certificates that she did submit are different. I've seen them earlier and now I can't find them. Yes. Let me just pull up the exact page for you. The first one is on page 301 and 302. The English translation is on 301. The Chinese form is on page 302. And the second one is page 357 and 359. 357 is the English translation and 359 is the actual certificate with the certificate of translation in between. And the difference in date, I gather, I'm now looking at the 359 and the 302. The 359 maybe looks like an 01, which is why you're saying it's a 0. That is correct. But there's some testimony that the husband traced over that to make it clearer. And it really doesn't look too much like a 0. It looks like somebody's traced over the line to make the 1 clearer and missed it by just a little bit. That's not the ordinary way to make a 0. Well, I mean, that is a possibility, but it doesn't compel the conclusion that her testimony is truthful. Well, what bothers me is that you did submit all this to the forensic department. And as to Exhibit 3, 4, and 5, she says, the production method used for these items indicates that they may be genuine. They are traditionally printed, which is consistent with the routine production of forms. And the only defect this forensic examiner finds is that, based on differences in the design and layout of the handwritten characters, the forms were not completed at the same time as each other. That is true. I mean, we don't know how they do it in China. I mean, we don't have forced sterilization in this country. We don't know how they document it, you know? Well, that also goes to another one of the immigration judge's bases, is that as the country reports reflect that in China, an abortion certificate is only created when the abortion is done voluntarily so that the person can receive medical leave from their work without getting in trouble. They're not produced. This is not an abortion certificate. Two different things. But it's analogous, as the immigration judge pointed out. Have you read my decision in He? I have not, Your Honor. It makes it very clear that they are very distinct, and you should not confuse the two. Okay. Furthermore, the immigration judge points out, though, that the signatures on the sterilization certificates are different. Can you show me those signatures that are supposedly different? Yes, I can, Your Honor. On page 302 of that certificate, on the bottom left square, there's just the one set of character. Yeah. On page 359, however, in the bottom left square, there are three separate lines. There are additional characters. Yes. It's not as though someone signed his name in one handwriting in the other. To the extent that the bottom of those three lines is the same as the one line that appears on the other, that appears to be similar, it's just we have an additional. Yes, there's additional. Okay. Furthermore, on page 302 in the bottom right-hand corner, it is blank. Yet on page 359, the bottom right-hand corner does have a line of characters. Again, the one on 359 has additional characters on both the right and left bottom. Correct. And so the immigration relied on that in determining that these certificates are not in fact or that they form an inconsistency which supports the adverse credibility finding. Based on that adverse credibility finding, the immigration judge concluded that she did not have a forced sterilization. What do you do with the additional information that's at least thought to be presented to the BAA while it's on appeal, the two pictures showing the scar? As we noted, the Board is an appellate body that does not consider new evidence on appeal. That's not necessarily true. We don't, but they do. Well, they now with the new regulations, when they are given new evidence, they will examine it to see if it establishes a prima facie case. And then if it does, they remand it to the immigration judge. But the petitioner did not request a remand and said they simply wanted them to consider it anew. So I'm supposed to pretend I never saw the scars on her stomach and that the BAA was not required to look at those pictures? They are not required. Under the regulations, they cannot look at new evidence. Wait, now or then? Because when did the new rule go into effect? Because I've seen older cases where they say we're not really an appellate body. We can look at stuff. Yeah, there have been the occasional cases where they do consider it on a limited basis. But the regulations, though, say that they do not consider new evidence. As of when? I don't have the exact date off the top of my head. I'm just wondering if those regs applied to this case or not. Well, even still, though, Your Honor, even if they did apply, the Board is not obligated because the simple showing of scars is not conclusive that she had a forced sterilization. Some cases, by the time I'm all finished with everything the IJ does and doesn't do, it just doesn't smell right. I'm afraid to me this is one of those cases. If you can't manage to get the one-year bar right, you just can't get much right. Well, but I would caution Your Honors not to conflate the one-year bar with the adverse credibility finding. Just because the immigration judge may have made a mistake there does not necessarily conclude that the adverse credibility finding. Of course, that's correct. But as I read the transcript, this IJ is, how do I want to say it, somewhat impatient and skeptical from the beginning. It's kind of like if you do a memo and you give it to a judge or senior partner in a law firm and it's full of typographical errors, the person you've given it to doesn't really trust it. I understand, Your Honor. They just think, well, if they can screw up that, screw up other things. Your Honor, I see that my time is up. If you have any further questions, I will gladly answer them. If not, we believe that the evidence in the record does not compel reversal and you should dismiss the petition for review. All right. Thank you, counsel. I just want to note you did a very good job with a difficult case. And I will send your concern. Yes. Let's get all on the same page. Sometimes it's better just to sit down while you're ahead. Did you hear what Judge Wardlaw just said?  Why don't you just submit? Okay. I'll just, you know. No, you know, I'm serious. We're running late. You should just really submit. Thank you. I will submit. Thank you, counsel. You're a little too subtle, aren't you? Okay. United States versus. . . Oh, okay. Louis Ritz-Heller submitted. United States versus. . .
judges: Lynn, Wardlaw, Fletcher W.